## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENYATTA WHITE, JR.,<br>    Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-CV-2688 |
| | : | |
| CITY OF PHILADELPHIA, *et al.*,<br>    Defendants. | : | |

### MEMORANDUM

**BAYLSON, J.**                                                    **AUGUST  2, 2021**

Kenyatta White, Jr., a pretrial detainee at the Philadelphia Industrial Correctional Center ("PICC"),[1] filed this *pro se* civil action using the Court's preprinted form for use by prisoners filing a claim pursuant to 42 U.S.C. § 1983.  Named as Defendants are PICC Warden Michelle Sparow, PICC employees Major Williams, Correctional Officer Halstead, and Correctional Officer Borbaker, and the City of Philadelphia.  Each Defendant is sued in their official and individual capacities.  White also seeks to proceed *in forma pauperis*.  For the reasons that follow, the application to proceed *in forma pauperis* will be granted, and the Complaint will be dismissed in part with prejudice and in part without prejudice.

## I.      FACTUAL ALLEGATIONS

White asserts that on May 12, 2021 he attempted to exit his cell after he had been on lock down for two weeks with no shower.  (ECF No. 1 at 5, 14.)[2]  When White refused to reenter his cell, Defendant Borbaker called him by a racial slur and told him "I will f***ing spray your black ass."  (*Id.*)  White then complied and reentered his cell to avoid further incident.  Borbaker

---

[1] Public records reveal that White is awaiting trial on attempted murder and related offenses.  *See Commonwealth v. White*, CP-51-CR-0000655-2021 (C.P. Phila.)

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

alleged wrote a false misconduct report resulting in White being locked in a cell, presumably in a special housing unit ("SHU") at PICC, for 30 days without any out of cell time or showers.  (*Id.*)

Defendant Major Williams is allegedly responsible for the SHU at PICC and "has the power to answer appeals and throw out false write ups."  (*Id.* at 6, 13.)  He allegedly allows inmates "to be punitive for months for false write ups, locked in cells for all their punitive time with no out of cell time."  (*Id.* at 6.)  White alleges that Williams never answered his appeal – apparently a reference to an appeal of the misconduct charge that resulted in White's placement in the SHU – and never responded to his grievances.  (*Id.* at 6, 13.)  He asserts he has been housed in the SHU for eleven months for the allegedly false misconduct report prepared by Borbaker.  (*Id.*)  He did not receive out of cell time or showers for 120 days.  (*Id.*)

Defendant Halstead allegedly wrote a false misconduct report about White on October 10, 2020, asserting that White chased another inmate with a shank after he got into an argument with Halstead about using a telephone.  (*Id.* at 7, 10.)  After the incident, Halstead alleged told White "[sexual expletive] I will write you up and make you rot in the hole."  (*Id.*)  White alleges that no weapon was ever recovered; nonetheless he was sent to the SHU for 45 days with no shower or out of cell time.  (*Id.*)  He alleges he received no hearing and no answer to his appeal and grievances.  (*Id.*)  White asserts that after the 45 days expired, he was kept in the SHU on administrative segregation for eleven months.  (*Id.*)

Warden Sparow allegedly has authority to overturn decisions made by all officers at PICC.  (*Id.* at 8, 12.)  White asserts that she is racially biased toward black inmates and has knowledge that the disciplinary hearing officers violate inmates' due process rights by not conducting hearings, by not serving inmates with copies of misconduct reports, and by keeping inmates locked in their cells for weeks and months until their punitive time expires.  (*Id.*)  He alleges that inmates then are placed in administrative segregation under the same conditions with

2

no showers or out of cell time.  (*Id.*)  Sparow was allegedly aware of her subordinates' conduct but fails to address appeals and grievances that allege this conduct or address their misconduct. (*Id.*)

White has also named the City of Philadelphia as a Defendant.  He alleges the City employs all persons at PICC and is responsible for making sure the prison is run correctly.  (*Id.* at 9, 11.)  The City is allegedly aware of unconstitutional conditions in the prison system and has violated White's constitutional rights by allowing prison officials to treat him like a zoo animal. (*Id.* at 9.)  The Complaint alleges that keeping inmates in lockdown for extended periods with no showers, access to cleaning products or out of cell time is unconstitutional.  (*Id.* at 11.)

White concedes that he suffered no physical injury from the incidents he describes.  (*Id.* at 15.)  He claims he has suffered emotional distress, pain and suffering, post-traumatic stress syndrome, that he takes medication, and does not trust people.  (*Id.*)  He seeks to be transferred to a different jail and punitive damages for his emotional injuries.

## II.     STANDARD OF REVIEW

The Court grants White leave to proceed *in forma pauperis* since he appears unable to pay the filing fee for this case.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).   Conclusory allegations do not suffice.  *Id.*  As White is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.    DISCUSSION

### A.    Claims Based on Verbal Threats

White filed this action using the Court's form for prisoners to use to raise constitutional claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court.  That section provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

White's claim against Defendant Borbaker based on being subjected to a racial slur and verbal threat is not plausible.  Court have been clear that verbal threats or taunts, without more, are insufficient to violate the Constitution.  *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.").  The allegation that Defendant Halstead used a sexual expletive and verbal threat likewise fails to state a plausible claim.  Although the United States Court of Appeals for the Third Circuit "has not specifically addressed the circumstances under which a correctional officer can be held liable for the sexual harassment of an inmate," courts elsewhere have held that "sexual harassment in the absence of contact or touching does not establish excessive and unprovoked pain infliction" as is required to state a claim for a constitutional violation.

4

*Chambliss v. Jones*, Civ. A. No. 14-2435, 2015 WL 328064, at *3 (M.D. Pa. Jan. 26, 2015)

(citations omitted); s*ee also*, *Bower v. Price*, Civ. A. No. 17-1473, 2018 WL 1334985, at *3

(M.D. Pa. Mar. 15, 2018) (collecting cases and holding that alleged verbal sexual harassment

alone does not give rise to a constitutional violation).  While the behavior alleged by White

against Borbaker and Halstead may be inappropriate, without allegations of direct physical

contact or pain resulting from the comment, it does not rise to the level of a constitutional

violation.  *Chambliss*, 2015 WL 328064, at *3.  Accordingly, White's constitutional claims

based on verbal threats are dismissed for failure to state a claim.

### B.     Claims Based on Allegedly Fraudulent Misconduct Reports

White alleges that Defendants Borbaker and Halstead each wrote up false misconduct

reports against him that resulted in White being confined to the SHU.  White also alleges that

Defendant Williams never answered an appeal – apparently a reference to an appeal of a

misconduct charge that resulted in White's placement in the SHU – and never responded to his

grievances. Warden Sparow allegedly has authority to overturn decisions made by all officers

PICC, but is racially biased toward black inmates, has knowledge that disciplinary hearing

officers violate inmates' due process rights, and fails to address appeals and grievances that

allege this conduct, resulting in inmates being locked in their cells for weeks and months until

their punitive time expires.  These allegations fail to state plausible constitutional claims.

"[T]he filing of a fraudulent misconduct report and related disciplinary sanctions do not

without more violate due process."  *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005)

(per curiam).[3]  This is because "[d]ue process is satisfied where an inmate is afforded an

---

[3]  *See also King v. Quigley*, Civ. A. No. 18-5312, 2019 WL 342710, at *2 (E.D. Pa. Jan.
25, 2019) (dismissing detainee's due process claims upon screening, where claims were based
exclusively on his belief that "the misconducts issued against him were false" and detainee did
not allege he was not provided applicable protections); *McDowell v. Deparlos*, Civ. A. No. 15-

opportunity to be heard and to defend against the allegedly false misconduct reports." *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (per curiam); *see also Smith*, 293 F.3d at 654 ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."). Thus, to state a plausible claim based on the filing of the reports, White must allege that he was denied an "opportunity to confront and challenge the allegedly perjured testimony offered in support of the misconduct reports." *Smith*, 293 F.3d at 654.

White's allegations on this point are inconsistent, incomplete, contradictory, and confusing. For the October incident, White seems to assert that he did not get a hearing (ECF No. 1 at 7), but also asserts he did not get an answer on his appeal or grievance arising from a hearing. Also, he asserts he had a hearing "on or around 10/17/20" (*id.* at 13), but asserts he was not present when he was found guilty and that he filed multiple appeals. He also alleges that Williams never answered an appeal – which assumes that there was some disciplinary process prior to the filing of that appeal – without specifying which appeal he refers to or providing any other context for the allegation. White also alleges generally that Warden Sparow has authority to overturn misconduct decisions, but is racially biased toward black inmates. White makes no allegation that Sparow was biased toward him, however, or how that bias effected his own disciplinary proceedings. He alleges that Sparow has knowledge of and ignores disciplinary

---

00487, 2017 WL 1158093, at *8-*9 (M.D. Pa. Feb. 2, 2017) (dismissing detainee's due process claim based on false misconduct report where detainee did not "allege that he was not provided with an explanation for his transfer to the SMU, nor that he was denied an opportunity to respond to the transfer, and he was held there in administrative custody for only fifteen days before his disciplinary hearing occurred, not indefinitely"), *report and recommendation adopted*, 2017 WL 1134407 (M.D. Pa. Mar. 27, 2017); *London v. Evans*, Civ. A. No. 19-559, 2019 WL 2648011, at *3 (D. Del. June 27, 2019) ("The filing of false disciplinary charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges.").

hearing officers' violations of inmates' due process rights, but does not allege any information about her specific involvement in his own disciplinary process.  Accordingly, the claims based on allegedly false misconduct reports must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) because they are not plausible as pled.  Because, however, the Court cannot say at this time that White can never assert plausible claims based on misconduct reports, the dismissal of these claims will be without prejudice and White will be permitted an opportunity to file an amended complaint to attempt to cure the defects the Court has identified.

### C.      Claims Based on Grievances

In alleging a due process violation based on the allegedly fraudulent misconduct reports, White asserts that several Defendants failed to address "grievances" as well as appeals.  It is unclear whether White used the word "grievances" interchangeably with "appeal" or if he was referring to his use of the prison grievance process for other reasons.  To the extent White seeks to assert a separate claim based on grievances, that claim is dismissed with prejudice.  Claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam).  Accordingly, the facts alleged by White about grievances do not give rise to a plausible basis for a constitutional claim and will be dismissed with prejudice.

### D.      Official Capacity Claims and Claims Against the City of Philadelphia

White seeks to assert his claims against the individual Defendants in their official as well as individual capacities.  Claims against City officials named in their official capacity are indistinguishable from claims against the City.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc.*

*Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*  Thus, White's official capacity claims are essentially the same as his claims against the City.

White seeks to hold the City of Philadelphia liable on a theory that the City is aware of unconstitutional conditions in the prison system and has violated White's constitutional rights by allowing prison officials to treat him like a zoo animal.[4]  To plead a basis for municipal liability against the City under § 1983 for a constitutional violation, a plaintiff must allege that a

---

[4] White describes several conditions in which he was held while in the SHU.  But those conditions are not meaningfully attributed to any of the individual Defendants, and in the absence of allegations of the Defendants' personal involvement they are not liable for any constitutional violations resulting from those conditions.  Although White alleges that the Warden generally knew about the allegedly unconstitutional conditions, his allegations against her are too generalized and conclusory to state a claim.

White also asserts that the City violates the rights of "inmates" by keeping them in lockdown for extended periods with no showers, access to cleaning products, or out of cell time.  To the extent White's claim against the City attempts to assert the rights of other inmates, it must be dismissed.

Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts.  Section 1654 thus ensures that a person may conduct his or her own case *pro se* or retain counsel to do so.  *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) )).  Although an individual may represent himself *pro se*, a non-attorney may not represent other parties in federal court.  *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007).  This principle has been applied by the Supreme Court, the United States Court of Appeals for the Third Circuit, and other courts in various contexts.  *See, e.g., Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993) (recognizing that corporations must be represented by counsel and that "save in a few aberrant cases, the lower courts have uniformly held that 28 U.S.C. § 1654 . . . does not allow corporations, partnerships or associations to appear in federal court otherwise through a licensed attorney" (footnote omitted) ); *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 667 (9th Cir. 2008) (holding that a non-lawyer could not litigate pro se on behalf of an ERISA plan); *Osei-Afriyie*, 937 F.2d at 882 ("We hold that Osei-Afriyie, a non-lawyer appearing *pro se*, was not entitled to play the role of attorney for his children in federal court."); *Phillips v. Tobin*, 548 F.2d 408, 411-12 (2d Cir. 1976) (holding that a non-attorney could not appear *pro se* to conduct a shareholder's derivative suit).  Accordingly, the Court will deem the allegation as merely background information to White's own claim against the City.

municipality's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Therefore, to state a claim under *Monell* that is plausible, a plaintiff must allege that: (1) the municipality had a policy or custom that deprived the plaintiff of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the plaintiff's injuries were caused by the identified policy or custom. *Id.* at 692-94; *Buoniconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 435-36 (E.D. Pa. 2015). Also, "[t]o satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, the Defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's]injury." *Id.* (internal quotations and alterations omitted).

White alleges only that the City is aware of unconstitutional conditions in the prison system that have caused him to be maltreated. This is insufficient to assert a plausible *Monell* claim since White fails to allege that the City had a policy or custom to maltreat prisoners, acted deliberately in accordance with that policy or custom, and the policy or custom was the moving force behind the deprivation. He also fails to identify what exactly that custom or policy was or the source of that policy or custom. The lone allegation that the City was "aware" of the

9

conditions at PICC does not state a plausible *Monell* claim.  *See Junne v. Atl. City Med. Ctr.*,

Civ. A. No. 07-5262, 2008 WL 1901111, at *11 (D.N.J. Apr. 25, 2008) (holding that "'mere

knowledge' allegations are insufficient to state a constitutional claim" under *Monell*); *E.C. v.*

*U.S.D. 385 Andover*, Civ. A. No. 18-1106, 2019 WL 1922173, at *6 (D. Kan. Apr. 30, 2019)

("The Court is not persuaded that [the school district's] mere knowledge — if any — of the

[school] disciplinary actions sufficiently evinces a policy, practice, or custom violating the

Constitution under § 1983.").  Because, however, the Court cannot say at this time that White

can never assert a plausible *Monell* claim, the official capacity claims and claims against the City

will be dismissed without prejudice and White will be permitted an opportunity to file an

amended complaint to attempt to cure the defects the Court has identified in his claim against the

City.

   **E.**  **Transfer to a Different Jail**

   The Court notes that White seeks to be transferred to a different jail.  It is well-settled that

prisoners have no inherent constitutional right to placement in any particular institution, to any

particular security classification, or to any particular housing assignment.  *See Wilkinson v.*

*Austin*, 545 U.S. 209, 221-22 (2005) (holding that the Constitution does not give rise to liberty

interest in avoiding transfers to more adverse conditions of confinement); *Lane v. Tavares*, Civ.

A. No. 14-991, 2016 WL 7165750, at *16 (M.D. Pa. July 12, 2016) (same).  Because White has

no right to be transferred to another institution, that portion of his claim for relief is not plausible.

**IV.**  **CONCLUSION**

   For the reasons stated, White's Complaint will be dismissed in part with prejudice and in

part without prejudice.  White is granted leave to file an amended complaint with regard to his

claims against all Defendants, except for any claims based on verbal threats or on the handling of

grievances.  An appropriate Order follows with additional information on amendment.

**BY THE COURT:**

**/s/ MICHAEL M. BAYLSON**

_____

**MICHAEL M. BAYLSON, J.**