IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENYATTA WHITE, JR., :<br>    Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 21-CV-2688 |
| : | |
| CITY OF PHILADELPHIA, *et al.*, :<br>    Defendants. : | |

## MEMORANDUM

BAYLSON, J.                                                                SEPTEMBER 13, 2021

In a prior Memorandum and Order filed on August 2, 2021, the Court dismissed the Complaint filed by Kenyatta White, Jr., a pretrial detainee at the Philadelphia Industrial Correctional Center ("PICC"). *White v. City of Philadelphia*, Civ. A. No. 21-2688, 2021 WL 3288606 (E.D. Pa. Aug. 2, 2021) ("the August Memorandum"). Certain claims were dismissed with prejudice, other claims were dismissed without prejudice, and White was granted leave to file an amended complaint if he was capable of curing the defects the Court identified in the claims dismissed without prejudice. White has now returned with an Amended Complaint, again raising claims pursuant to 42 U.S.C. § 1983. (ECF No. 8 ("the AC")). Named as Defendants in the AC are the City of Philadelphia, the Philadelphia Department of Prisons ("PDP"), PICC Warden Michelle Farrell,[1] Major Williams, and Correctional Officer Rahdad.[2] For the reasons

---

[1] White previously referred to the Warden by the name "Sparow." In the AC he corrects the name of the Warden and the Court will refer to her as Warden Farrell.

[2] White failed to follow the Court's instruction that he list all Defendants in the caption of the AC as well as in the body of the AC. Specifically, he failed to list Defendant Rahdad in the caption. The Clerk will be directed to add Rahdad to the docket. White did not reassert claims against Correctional Officer Halstead, and Correctional Officer Borbaker, who were named in the original complaint. Accordingly, those individuals will be terminated as defendants.

1

that follow, the AC will be dismissed in part and the balance of White's claims will be served for a responsive pleading.

I.      **FACTUAL ALLEGATIONS**

In the August Memorandum, the Court dismissed claims against the City because White had failed to assert plausible official capacity and municipal liability claims.[3]  *See August Memorandum*, 2021 WL 3288606, at * 4 (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)).  To cure the defect in these claims, White includes lengthy allegations about the City's management of PICC.  He alleges the City has the power and authority to control, change policies, and enforce rules of the PDP, but the City allows the PDP "to run a prison without making sure inmates [sic] constitutional rights are being fully respected."  (ECF No. 8 at 2.)[4]  He references a separate lawsuit, *Remick v. City of Philadelphia*, Civ. A. No. 20-1959 (E.D. Pa.), where inmates have sued the City for constitutional violations.  White alleges that the City "is falsely stating on paperwork that the jails are at better conditions which is a lie the jails are on lock down for weeks at a time do [sic] to 'staff shortages.'"[5]  (*Id.*)  White asserts the City permits

---

[3] White has again asserted individual and official capacity claims against each Defendant. (*Id.* at 11.)

[4] The Court adopts the pagination supplied by the CM/ECF docketing system.

[5] The Court takes judicial notice that the parties in *Remick* entered into a "Consent Order on Partial Settlement Agreement" on June 3, 2020, under which the City agreed to provide personal protective equipment to inmates, undertake COVID-19 sanitary procedures, and implement social distancing in the Philadelphia prisons.  (*See* ECF No. 35.)  An order filed on December 18, 2020, while recognizing that PDP facilities remained under "shelter-in-place" protocols, provided for universal inmate and staff testing for COVID-19, and pending the results of that testing, "the PDP shall ensure that all incarcerated persons are permitted a daily minimum of forty-five (45) minutes of time out of their cells for showering, phone calls, and exercise, subject to further court order increasing out-of-cell time at the point when shelter-in-place is no longer in effect."  (ECF No. 55.)
   An Order filed on January 13, 2021 provided that, while operating under the shelter in place policy, inmates would receive 45 minutes out of cell time each day in increased cohorts, while maintaining social distancing from each other.  (ECF No. 62.)  The City was then ordered

the PDP to "run on policies/customs that are very inhumane and unconstitutional . . . by keeping [White] locked in a cell for weeks at a time, with no shower, no phone call, no video visits, denying medication."[6] (*Id.* at 3.) He also asserts that the City permits PDP to have policies that allow its staff to violate his constitutional rights and claims the PDP has a policy to fail to "comply with a[n] order from the Federal Court in the *Remick v. Philadelphia* case [by which] each inmate is suppose to get 3 hrs out of cell time each day but inmates are still currently locked in cells for weeks at a time." (*Id.*)

---

on January 28, 2021 to "steadily increase its cohort sizes" to allow additional out of cell time to two hours by February 10 and to three hours by February 24, 2021. (ECF No. 63.) That Order also stated that its provisions "shall not supersede conditions imposed by operational emergencies." (*Id.*)

On May 4, 2021, the Court entered an additional Order finding that the City failed to comply with prior orders concerning out of cell time based on the parties' jointly submitted reports. (ECF No. 70.) The City was ordered to fund additional classes for training correctional officers, impose discipline on correctional officers who failed to report for work, use overtime to provide sufficient staffing, provide incentives for correctional officers who report to work, and continue to report its progress to the Court. (*Id.*)

On June 23, 2021, the Court approved a settlement agreement whereby the *Remick* plaintiffs withdrew a motion for contempt, Defendants agreed to make a one-time monetary payment to a bail fund and make all reasonable efforts to increase out of cell time to 4 ½ to 5 hours for vaccinated inmates, 3 ½ hours for general housing units, 3 hours for quarantined housing units, and 1 hour for segregation units. (ECF No. 81.) The *Remick* plaintiffs' latest status report asserts that the staffing shortages continue to disrupt the provision of minimal daily out of cell time and reports that the City, by its own admission, has not been complying with the January 28, 2021 Order. (ECF No. 88.)

[6] To the extent that White makes allegations concerning denial of medical treatment, any claim based on that allegation is dismissed without prejudice. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). White does not provide any plausible allegation that any named Defendant was deliberately indifferent to a serious medical need and it is not at all clear that he intended to present such a claim in this case. To the extent White seeks to pursue a claim against prison medical personnel who were actually responsible for failing to provide him medical care, he may assert those claims in a separate lawsuit.

White asserts that Warden Farrell, as the highest ranked official at PICC, has a duty to enforce all policies and to abide by the order entered in *Remick* and the ability to speak with the prison commissioner to change policies. (*Id.* at 4-5.) White also alleges that, while Farrell was touring his cell block, he asked her to look into his appeals for three "write ups" for which he has been housed in the special housing unit ("SHU"). (*Id.* at 4.) He asserts that "she sent [him] to the 15th police district twice to be recharged for false write ups that now turned into a criminal matter for false conduct reports." (*Id.*) He also alleges an incident of retaliation against Farrell in August 2021, after the original Complaint in this case was filed, during which she "sent" a sergeant and Defendant Rahdad to White's cell. White was allegedly handcuffed, assaulted, taken off the block, strip searched, made to touch his private area, and put his hands in his mouth. (*Id.* at 5.) Allegedly, an unidentified prison official said to White "the Warden knows about your civil suit." (*Id.*)

Defendant Rahdad was also allegedly involved in an incident on February 12, 2021, during which he and White "got into a heated argument" and Rahdad stated he would punch White in his face. Rahdad, along with a non-defendant lieutenant and sergeant, opened White's cell and started punching him and his cell mate in their faces. (*Id.* at 6.) White was handcuffed, the cell was searched, a broken cell phone was allegedly recovered, and White was allegedly refused medical treatment. (*Id.*) He denied he had a cell phone, and contends that Rahdad planted the cell phone under his bed. (*Id.* at 7.) He alleges that Rahdad wrote a false misconduct and had White charged criminally for possession of contraband.[7] (*Id.*) White contends that

---

[7] A review of public records confirms that White was criminally charged on February 12, 2021 with possession of contraband at PICC. *Commonwealth v. White*, MC-51-CR-2966-2021. That case remains pending. He was also charged with aggravate assault, simple assault and recklessly endangering another person at PICC on July 29, 2021. *Commonwealth v. White*, MC-51-CR-14704-2021. That case also remains pending.

4

Rahdad has "many reports against him for assaulting inmates" but Warden Farrell "does nothing about him" even though he "threatens to assault inmates everyday he works" on White's block. (*Id.*)  As a result of Rahdad punching him in the face, White asserts he sustained an injury to his jaw for which he received no medical attention.  (*Id.* at 10.)

Defendant Major Williams allegedly oversees misconduct hearings at PICC, and determines when inmates are placed on or released from the SHU.  (*Id.* at 8.[8])  Williams allegedly violated White's due process rights "by not conducting misconduct hearings so [White] . . . could get a chance to fight against false misconduct reports."  (*Id.*)  White asserts that no misconduct hearing has been held at PICC for six months, during which White "has been found guilty of 3 misconduct reports in which he was not present at any hearing and when an appeal is filed no one answers."  (*Id.*)  He alleges he "has been stuck on the (SHU) for over 11 months for false reports with the camera evidence or any merit to prove these allegations."  (*Id.*)  While housed on the SHU, he is locked in a cell with no showers, phone calls, or out of cell time "for weeks even a month at a time," which he alleges constitutes cruel and unusual punishment.  (*Id.* at 9.)  White seeks compensatory and punitive damages against each Defendant.  (*Id.* at 11.)

## II.   STANDARD OF REVIEW

As the Court has granted White leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the AC if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see*

---

[8] White includes allegations in this section of the AC that refer to other inmates.  In the August Memorandum, the Court told White that, as he is proceeding *pro se*, he may only assert his own claims and not claims of other inmates.  *Id.*, 2021 WL 3288606, at *4, n.4   Since White is the only named Plaintiff the Court considers the allegations about other inmates to be offered solely as background information to White's own claims.

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As White is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) *Vogt v. Wetzel*, No. 18-2622, 2021 WL 3482913, at *2 (3d Cir. Aug. 9, 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Vogt*, 2021 WL 3482913, at *2 (quoting *Mala*, 704 F. 3d at 244. The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Vogt*, 2021 WL 3482913, at *2 (quoting *Mala*, 704 F. 3d at 245).

### III. DISCUSSION

#### A. Claims Against the PDP

White's claims against the PDP must be dismissed under 28 U.S.C. § 1915(e)(2)(B) because they are not plausible. The PDP is an agency of the City. City agencies are not suable entities under § 1983 because they do not have a separate legal existence. *See Vurimindi v. City of Philadelphia*, Civ. A. No. 10-88, 2010 WL 3169610, at *1 (E.D. Pa. Aug. 10, 2010) (holding that under 53 Pa. Cons. Stat. § 16257, "no such department shall be taken to have had . . . a separate corporate existence, and hereafter all suits growing out of their transaction . . . shall be in the name of the City of Philadelphia"); *Green v. City of Philadelphia*, Civ. A. No. 19-2190, 2019 WL 2766590, at *3 (citing *Vurimindi* and dismissing PDP as a defendant because it is not a separate legal entity from the City). Accordingly, White's claims against the Philadelphia

6

Department of Prisons are not plausible and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.     Individual Capacity Claims Against Defendant Rahdad**

White alleges that Defendant Rahdad wrote a false misconduct and had White charged criminally for possession of contraband after Rahdad planted a cell phone in his cell. In screening White's original Complaint, the Court noted that "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process." *August Memorandum*, 2021 WL 3288606, at *3 (quoting *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*)).[9] This is because "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports." *Id.* (quoting *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*)); *Smith v. Mensinger*, 293 F.3d 641, 654 ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."). Thus, to state a plausible claim against Rahdad, White must allege that he was denied an "opportunity to confront and challenge the allegedly perjured testimony offered in support of the misconduct reports." *Smith*, 293 F.3d at 654.

---

[9] *See also King v. Quigley*, Civ. A. No. 18-5312, 2019 WL 342710, at *2 (E.D. Pa. Jan. 25, 2019) (dismissing detainee's due process claims upon screening, where claims were based exclusively on his belief that "the misconducts issued against him were false" and detainee did not allege he was not provided applicable protections); *McDowell v. Deparlos*, Civ. A. No. 15-00487, 2017 WL 1158093, at *8-*9 (M.D. Pa. Feb. 2, 2017) (dismissing detainee's due process claim based on false misconduct report where detainee did not "allege that he was not provided with an explanation for his transfer to the SMU, nor that he was denied an opportunity to respond to the transfer, and he was held there in administrative custody for only fifteen days before his disciplinary hearing occurred, not indefinitely"), *report and recommendation adopted*, 2017 WL 1134407 (M.D. Pa. Mar. 27, 2017); *London v. Evans*, Civ. A. No. 19-559, 2019 WL 2648011, at *3 (D. Del. June 27, 2019) ("The filing of false disciplinary charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges.").

White's allegations on this point are, like those contained in his original Complaint, inconsistent. He asserts that PICC officials are not "conducting misconduct hearings so [White] . . . could get a chance to fight against false misconduct reports." but also alleges his misconducts have been adjudicated, and he "has been found guilty of 3 misconduct reports in which he was not present at any hearing and when an appeal is filed no one answers." (ECF No. 8 at 8.) Nonetheless, construing these allegations liberally, the Court will permit his claim against Defendant Rahdad to go forward and require Rahdad to file a responsive pleading since White appears to assert he was not afforded an opportunity to be heard and to defend against the allegedly false misconduct report.

White also alleges that Rahdad employed excessive force when he punched White in the face. This claim will also be served for a responsive pleading. *See Jackson v. Bueno*, Civ. A. No. 20-0687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (when screening an excessive force claim under § 1915, the Court asks whether the prisoner has alleged plausibly that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline.").

### C. Official Capacity Claims and Claims Against the City of Philadelphia

White again seeks to assert his claims against the individual Defendants in their official as well as individual capacities. As noted in the August Memorandum, claims against City officials named in their official capacity are indistinguishable from claims against the City. *August Memorandum*, 2021 WL 3288606, at *4 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell*, 436 U.S. at 690, n. 55 (1978))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit

against the entity." *Id.* Thus, White's official capacity claims are essentially the same as his claims against the City.

As the Court explained in the August Memorandum, to plead a basis for municipal liability against the City under § 1983 for a constitutional violation, a plaintiff must allege that a municipality's policy or custom caused the violation of his constitutional rights. *Id.* at *4 (citing *Monell*, 436 U.S. at 694). Therefore, to state a claim under *Monell* that is plausible, a plaintiff must allege that: (1) the municipality had a policy or custom that deprived the plaintiff of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the plaintiff's injuries were caused by the identified policy or custom. *Id.* at 692-94; *Buoniconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 435-36 (E.D. Pa. 2015). Also, "[t]o satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, the Defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted).

In the AC, White alleges the City allows the PDP "to run a prison" without making sure inmates' constitutional rights are being fully respected. This is not a plausible policy allegation

that satisfies *Monell*. *See McTernan*, 564 F.3d at 658 (explaining allegation that City "has a policy of ignoring First Amendment right[s]" was insufficient to state a claim). White's allegation that the City is filing false paperwork in *Remick* also does not state a policy. His claim that the City "permits" PDP to have policies that allow its staff to violate his constitutional rights is conclusory and also does not allege a plausible *Monell* claim.

However, White's claims that the City permits the PDP to "run on policies/customs that are very inhumane and unconstitutional . . . by keeping [White] locked in a cell for weeks at a time, with no shower, no phone call, no video visits, denying medication" does allege a specific policy that allegedly deprived White of his constitutional rights. Accordingly, this aspects of White's claims against the City will be served for a responsive pleading, as well as his official and individual capacity claims against Warden Farrell, alleging that she has enforced these policies.[10] The official capacity claims against Defendants Rahdad and Major Williams, however, are not plausible since White fails to allege that these Defendants were acting pursuant to a specific City policy when Rahdad employed excessive force or wrote a false misconduct report, or when Williams conducted an improper misconduct hearing.[11]

---

[10] White's assertions that the City has a policy to fail to comply with orders in *Remick* and that Farrell is liable because she failed to abide by the order entered in *Remick* are less clear. The Court is not prepared to rule on statutory screening that these allegations cannot state plausible *Monell* claims. The Court merely notes that White has not specified what constitutional right was allegedly violated by this policy and the Court, rather than speculate, will reserve judgment on the claims pending receipt of a responsive pleading to aid in the analysis.

[11] As the Court has already afforded White an opportunity to correct defects in official capacity and *Monell* claims, and further attempts at amendment appear to be futile, the dismissal of the claims not specifically permitted to proceed will be with prejudice. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002); *see also Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story").

### D.    Individual Capacity Retaliation Claim Against Warden Farrell

White appears to assert a separate claim against Warden Farrell based on retaliation. He alleges that in August 2021, after the original Complaint in this case was filed, Farrell "sent" a sergeant and Defendant Rahdad to White's cell to assault him. (ECF No. 8 at 5.) Allegedly, an unidentified prison official said to White "the Warden knows about your civil suit." (*Id.*) In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, No. 19-2580, 2020 WL 2125780, at *3 (3d Cir. May 5, 2020). White's allegation that Farrell sent Rahdad and the sergeant to assault him because he filed this lawsuit states a plausible retaliation claim and will be served for a responsive pleading.

### E.    Individual Capacity Claim Against Major Williams

Finally, the individual capacity claim against Major Williams is based on his allegedly conducting a hearing without White being present and able to present a defense, resulting in White being held in the SHU. The United States Court of Appeals for the Third Circuit has noted that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Kanu*, 739 F. App'x at 116. Such protections "include the right to receive

written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007). As White asserts he had no opportunity to present a defense and Williams conducted the hearing without him being present, the claim against Major Williams will also be served for a responsive pleading.

## IV.   CONCLUSION

For the reasons stated, White's Amended Complaint will be dismissed in part and the balance of the claims will be served for a responsive pleading. The accompanying Order terminates Correctional Officer Halstead and Correctional Officer Borbaker as Defendants, dismisses the official capacity claims against Defendants Rahdad and Williams with prejudice, dismisses any medical deliberate indifference claims without prejudice, and dismisses all claims against Defendant Philadelphia Department of Prisons with prejudice.

                                                **BY THE COURT:**

                                                **/s/ MICHAEL M. BAYLSON**
                                                _____
                                                **MICHAEL M. BAYLSON, J.**